IN THE UNITED STATES DICTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LEE MARIE TORMOS POL<br><br>PLAINTIFF<br><br>VS.<br><br>YOLANDA TOYOS OLASCOAGA, HER HUSBAND JOSÉ O. RAMOS GONZÁLEZ AND THE CONJUGAL PARTNERSHIP EXISTING BETWEEN THEM; ANTONIO J. AMADEO MURGA, HIS WIFE EDNA FORNARIS AGUILU AND THE CONJUGAL PARTNERSHIP EXISTING BETWEEN THEM; RAMOS GONZALEZ & TOYOS OLASCOAGA, CSP; AND INSURANCE CARRIERS A THROUGH Z, BECAUSE THEIR IDENTITIES ARE NOT KNOWN AT THIS TIME<br><br>DEFENDANTS | CIVIL NO.: 13-1696<br><br>FOR:<br><br>LEGAL MALPRACTICE AND DAMAGES |

**C O M P L A I N T**

TO THE HONORABLE COURT:

**NOW COME** Plaintiff, Lee Marie Tormos Pol, and respectfully sets forth and prays:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the present case by virtue of 28 U.S.C. § 1332 (a) (1) as the claim exceeds $75,000 and there is total diversity between the parties. Venue is proper under the provisions of 28 U.S.C. § 1391 (b).

1

## ALLEGATIONS COMMON TO ALL COUNTS

2. That at all times herein material Plaintiff Lee Marie Tormos Pol (the "Plaintiff"), was and is of legal age, single, physician and resident of Charleston, South Carolina.

3. That at all times material to this action, Defendant, Yolanda Toyos Olascoaga ("Toyos") was and is a lawyer licensed to practice law pursuant to the laws of the Commonwealth of Puerto Rico, admitted to practice said profession before this Honorable Court. Co-defendant Toyos is married and constituted a conjugal legal partnership with José O. Ramos González.

4. That at all times material to this action, Defendant, José O. Ramos González ("Ramos") was and is a lawyer licensed to practice law pursuant to the laws of the Commonwealth of Puerto Rico, admitted to practice said profession before this Honorable Court. Co-defendant Ramos is married and constituted a conjugal legal partnership with Yolanda Toyos Olascoaga.

5. That at all times material to this action, Defendant, Antonio J. Amadeo Murga ("Amadeo") was and is a lawyer licensed to practice law pursuant to the laws of the Commonwealth of Puerto Rico, admitted to practice said profession before this Honorable Court. Co-defendant Amadeo is married and constituted a conjugal legal partnership with Edna Fornaris Aguilú.

6. That at all times material to this action, Defendant, Ramos González & Toyos Olascoaga, CSP ("RG&TO") was and is a professional corporation organized and existing under the laws of the Commonwealth of Puerto Rico, with principal offices located in San Juan, Puerto Rico.

7. All defendants collectively represented plaintiff in her case as discussed *infra* and are collectively responsible for the course of the case until September 11, 2012 when the undersigned took over.

8. Upon information and belief, at all times herein pertinent, INSURANCE CARRIERS A TO Z, were the insurance carriers for the defendants, covering and insuring their respective liabilities and acts as alleged in the Complaint, whose identities are not known at this time but will be identified through discovery and are liable to Plaintiff for her damages as discussed *infra*.

9. The above named and unnamed insurance companies had issued insurance policies to cover the negligence claims asserted in this litigation, and thus, plaintiff is entitled to file a direct action against the insurers under Puerto Rico law.

**FACTUAL BACKGROUND**

10. Plaintiff Tormos-Pol is a medical doctor who, after graduating as a medical doctor, obtained a specialty degree as an Anatomic and Clinical Pathology from the University of Puerto Rico's School of Medicine. She became a career employee of the Forensic Sciences Institute of Puerto Rico, starting to work as an Auxiliary Forensic Pathologist in the Forensic Science Institute in July 2, 2007. While pursuing her specialty degree in Anatomic and Clinical Pathology, it was the aim of the Plaintiff to obtain a subspecialty in Forensic Pathology.

11. During the last year of her specialty training in Anatomic and Clinical Pathology, Plaintiff worked for approximately eight months, an average of eight hours per week and independent of her regular duties, in the process of complying with the application process for reaccreditation of the Forensic Pathology Fellowship Program through the Forensic Sciences Institute. Plaintiff received no compensation for this work. Plaintiff had obtained a special authorization from her Residency Director, Dr. Román Vélez, in order to help in the

reaccreditation process of the Forensic Pathology subspecialty program, under the Direction of Dr. Irma Rivera-Diez of the Forensic Sciences Institute.

12. At all times, Fellowship Director Dr. Rivera-Diez, Pathology Director Dr. Maria Conte-Miller, and Forensic Sciences Director, Dr. Jose F. Rodríguez-Orengo, made clear to Plaintiff that the efforts that were to be made for the reaccreditation of the Program were motivated by Plaintiff's interest in the Program. It should be noted that the Forensic Pathology Fellowship Program is a subspecialty degree conferred by the University of Puerto Rico's School of Medicine and the Forensic Sciences Institute is the hosting and training institution and a legal agreement exists between these two institutions.

13. In December 2007, the Forensic Pathology Fellowship Program was finally reaccredited. Plaintiff's efforts were instrumental in obtaining the reaccreditation. It should be noted that the Forensic Sciences Institute Director, Dr. Rodríguez-Orengo, came to an agreement with the Dean of the School of Medicine of the University of Puerto Rico, Dr. Walter Frontera-Roura, so that the Forensic Pathology fellowship position would have a financial incentive of a salary amounting $65,000. This agreement pursued the objective of attracting more candidates to the fellowship program.

14. After the Forensic Pathology Fellowship Program was reaccredited, candidates were considered for the position of Forensic Pathology Fellow. Plaintiff and Dr. Darío Sanabria-Bellasai were the only two candidates for the fellowship position, scheduled to begin on July 1st, 2008.

15. On March 31st, 2008, Plaintiff received a letter from the Forensic Sciences Institute indicating that she had not been selected for the Program, based on the fact that she did not have Board Certification. She was informed that the Committee would give her the fellowship

position for the following year, that is, July 2009, if she applied for the Board Certification examination. Board certification, however, is not a requirement for acceptance in any subspecialty program.

16. During the academic year 2008-2009, Dr. Sanabria-Bellasai underwent his subspecialty training as a Forensic Pathologist, maintaining his position, benefits, and annual pay of $65,000 as an Auxiliary Pathologist.  In July, 2009 the University of Puerto Rico's School of Medicine awarded Dr. Sanabria-Bellasai the subspecialty degree of Forensic Pathologist based on the training he had undergone at the Forensic Sciences Institute.

17.  In January 2009, after applying for the Board Certification examination to be given in June 2009, Plaintiff notified Dra. Conte-Miller, then Director of the Forensic Science Institute, her acceptance of the offer by the Institute to start her Forensic Pathology Fellowship in July 2009. Plaintiff was notified that she had been selected for the Forensic Pathology Fellowship Program hosted by the Forensic Sciences Institute and would start July 1st, 2009.

18. To her surprise, on June 16, 2009, the Forensic Sciences Institute Director of Human Resources and the Forensic Sciences Institute Finance Director met with Plaintiff and informed her that the Institute was unable to pay her the same compensation she was offered and which had been paid to Dr. Sanabria-Bellasai while he underwent his subspecialty fellowship training the preceding year. Although Plaintiff met on multiple occasions with representatives of the University of Puerto Rico's School of Medicine and representatives from the Forensic Sciences Institute the inferior compensation was not changed.

19. Plaintiff informed them that the significantly inferior compensation would amount to financial hardship and therefore had to decline the Forensic Pathology fellowship position and would continue as an Auxiliary Forensic Pathologist, her career position at the Forensic Sciences

Institute. On July 8, 2009, Plaintiff, through legal counsel, complained via fax letter addressed only to the University of Puerto Rico, that the above-mentioned unequal and inferior pay offer constituted sexual discrimination and demanded equal treatment and equal pay, as provided to her male counterpart in a similar situation.

20. Shortly after the University of Puerto Rico received the above-mentioned faxed letter, Plaintiff was summoned to the office of Dr. Conte-Miller, Director of the Forensic Sciences institute. Dr. Conte Miller confronted her with a copy of said letter in a hostile manner and accused Dr. Tormos of acting in bad faith. Plaintiff was informed that if she did not accept the Fellowship Position with the current, inferior and discriminatory terms of compensation, she could not be part of the Institute, which was a violation of her rights as a career employee in the public service.

21. Next morning, Plaintiff's electronic I.D. card was deactivated and access to her office, computer system, and all areas of the Institute was denied. This was done by Dr. Conte-Miller in retaliation for Plaintiff not accepting the Fellowship position Program on the discriminatory terms provided by the University of Puerto Rico and the Forensic Sciences Institute as the host and training facility. Even though Plaintiff requested reactivation of her I.D. card, activated the corresponding labor grievance action, and attempted to discuss the situation with the proper human resources representatives, she was not allowed to work, was not assigned any work and other employees of the Forensic Sciences Institute were advised that they were unauthorized to discuss any pending cases with her.

22. In view that the discriminatory acts of reprisals and retaliation against Plaintiff continued, Dr. Tormos-Pol sent a letter to Dr. Conte-Miller indicating that as a result of her order to terminate her employment she would cease her duties July 21st, 2009. This constituted a

constructive firing. Plaintiff filed administrative charges of discrimination against the Forensic Sciences Institute and the University of Puerto Rico, Medical Sciences Campus, with the United States Equal Employment Opportunity Commission (E.E.O.C).

**FACTS GIVING RISE TO CAUSES OF ACTION**

23. On April 26, 2010, Plaintiff retained the services of the law firm Ramos González & Toyos Olascoaga, CSP, to represent her in a legal claim against the University of Puerto Rico and the Forensic Sciences Institute. As a result of the legal representation agreement formalized between Dr. Tormos-Pol and the above-mentioned law firm, counsels Amadeo Murga, Miranda-Broco, Ramos-González, and Toyos-Olascoaga appeared on behalf of Dr. Tormos-Pol during the course of the litigation. In addition, Ms. Heidi Miranda Broco, an employee or agent of the defendants, worked in Plaintiff's case. Following the advice of co-defendant Toyos Olascoaga, Plaintiff requested and obtained a Notice of Right to Sue from the E.E.O.C on June 29, 2010.

24. Even though Dr. Tormos-Pol retained the services of the above-mentioned law firm during the month of April 2010, it wasn't until the 27th of September, 2010 that the corresponding pleading was filed at the United States District Court for the District of Puerto Rico, well over a year after Dr. Tormos-Pol's constructive discharge date of July 21st, 2009. The Honorable Court assigned the action to the Honorable Judge Carmen Cerezo, under the Civil Case No. 10-1935. The complaint was signed by co-defendants Toyos-Olascoaga, Ramos-González, and Amadeo-Murga.

25. When plaintiff first spoke with defendants, Mr. González Ramos and Ms. Toyos-Olazcoaga represented themselves as experienced attorneys, especially in the area of federal labor litigation. Same when Mr. Amadeo-Murga joined the case. Hence, defendants knew or should have known that plaintiff's claims for violation of her due process rights and equal

7

protection under the Fourteenth Amendment pursuant to §1983 of the Civil Rights Act had a one year statute of limitations from the date of her constructive discharge, and that the filing of charges in the EEOC would not toll said actions. Defendants did not take file a timely complaint nor tolled the statute of limitations of the §1983 action, which was subsequently dismissed by the Federal Court as time barred.

26. On September 29, 2011, the District Court issued an Opinion and Order, and Partial Judgment, in which all claims asserted against the University of Puerto Rico and Dr. Frontera Roura were dismissed with prejudice pursuant to their Motions to Dismiss under Rule 12(b). The Honorable Court stated that "there is nothing in the complaint to connect U.P.R. and Frontera in any way to the terms of the Forensic Pathology Residency offered to Tormos-Pol or her termination of employment at the FSI. Whatever specific facts she may have alleged against them in her charge made to the Anti-Discrimination Unit were left behind when she filed her complaint, and her amended complaint, before this court. 'The Court is under no duty to exercise imagination and conjure what a plaintiff might have alleged, but did not, and do counsel's work for him or her. It is enough to view the basic complaint. In this instance the complaint failed to contain the allegations which plaintiff now wishes called to mind.'"

27. On November 30, 2011, the District Court issued another Opinion and Order, and Partial Judgment, in which some of the claims asserted against defendants Forensic Sciences Institute, Dr. María Conte-Miller, and Dr. Irma Rivera-Diez, were dismissed with and without prejudice pursuant to their Motion to Dismiss under Rule 12(b). The District Court stated that some of the claims brandished by Dr. Tormos-Pol were time barred since plaintiff's constructive discharge occurred on July 21st, 2009. Also, the Opinion and Order states that "[i]n her opposition, plaintiff attempts to tacitly amend her complaint by introducing facts that are not

plead in her complaint. She now claims that she was denied the request for a fellowship program up until May 13, 2010. She brings as an exhibit a copy of the charge that she filed with the Puerto Rico Anti Discrimination Unit (ADU) to demonstrate details that were omitted from her amended complaint. She further contends that she continued suffering discriminatory retaliation as late as February 2011, when she finally received monies owed to her (opposition at 8) and, therefore, [her] causes of action for reprisal and discrimination under 1983 and Title VII are not time-barred. … The Court may not read into Tormos-Pol's amended complaint what purports to be an effort to correct through argument in her opposition, what appears in hindsight, to be deficiencies in her amended complaint.  Plaintiff's poorly organized amended complaint fails to delineate which claims are brought under which laws and against which defendant(s), as required by Iqbal and Twombly, *supra*. The claims are set forth in the vaguest form possible . . . " This can hardly be called the work of experienced federal litigators, conversant in labor law intricacies.

28. The original Complaint was amended on September 29, 2010, two (2) days after its filing; a Second Amended Complaint, which was tendered and whose filing was denied by the District Court, also failed to correct any of the aforementioned deficiencies. In addition, after the District Court entered the afore-mentioned Partial Judgments, none of the defendants filed a Rule 59(e) motion to alter or amend said Opinions or Judgments. This is especially egregious since discovery was ongoing and the depositions of Drs. Conte-Miller, Rivera-Diez and Sanabria-Bellasai were taken during the month of September, 2011. Moreover, Plaintiff was not informed by the defendants of said Partial Judgments in an immediate manner, neither was she informed or given the option of appealing the Honorable Court's decisions nor were any appeals filed on her behalf.

29. In addition, plaintiff's claims under local statutes 69 and 80 were dismissed without prejudice, but Plaintiff was not informed by defendants of her right to filed those claims in state court nor were they filed on her behalf by them. No explanation was provided for this failure.

30. During the month of December, 2011, Plaintiff had a telephone conference with Co-Defendants Toyos-Olascoaga and Amadeo-Murga in which she requested explanations as to why parts of her case were dismissed as time-barred and other matters that preoccupied her. At all times during said telephone conference, Co-Defendants Toyos-Olascoaga and Amadeo-Murga evaded plaintiff's questions stating that the Judge had decided these claims "on their merits". Co-Defendants told Plaintiff that, after the case was completed, they could appeal said final decision if they felt the decision was not appropriate. As a result of this telephone conference, Co-Defendant Amadeo-Murga sent an emailed letter to Plaintiff which he expressed their position as discussed during the telephone conference.

31. After said telephone conference, all contact with Co-Defendants Toyos-Olascoaga and Amadeo-Murga, became extremely tense and difficult, including those connected to ongoing settlement negotiations. Plaintiff lost confidence in her attorneys at that point.

32. As a result, during the month of December 2011, Plaintiff started inquiring with other counsels as to defendants' actions. The consulted counsels stated that, in their opinion, defendnats had committed legal malpractice, but due to professional courtesy they would not be interested in filing a malpractice complaint against said defendants.

33. On April 13, 2012 celebrated a settlement conference that was mostly dedicated to pending motions. The minutes of said conference stated as follows:

> Regarding the Motion in Limine to Preclude Certain Evidence Economic Damages (docket entry 83) filed by defendants Conte-Miller and Rivera-Diez discussed at the January 31, 2012 Pretrial Conference, the minutes of the Pretrial Conference (docket entry 92) indicate at paragraph 2, page 2, that plaintiff had

provided in the Joint Amended Proposed Pretrial Order (docket entry 82), at pages 55-56, only a list of airlines, car rentals, bulk numbers as to moving expenses or miscellaneous expenses and difference in salaries, without supporting evidence. Plaintiff was ordered during the January 31, 2012 Pretrial Conference to list by February 10, 2012 and to provide by such date copies of receipts/invoices of these expenses and of her alleged lower salary. She was admonished that failure to do so would result in preclusion of the claim for economic damages listed at pages 55-56 of docket entry 82. Defendants were allowed to raise objections.

On April 11, 2012 defendants, in a reply (docket entry 100) to plaintiff's opposition to their motion in limine, complained that plaintiff only submitted documents to support miscellaneous expenses in the amount of $10,859.61. Due to the claim of insufficiency of evidence raised by defendants, it was necessary to review the list made by plaintiff of her alleged economic damages at pages 55-56 of the Amended Proposed Pretrial Order (docket entry 82). <u>This was a painstaking task due to the disorganized manner in which plaintiff's counsel, Yolanda V. Toyos-Olascoaga, kept the evidence in support of the damages listed therein. It was necessary to go item by item. As a result of this detailed review, the following expenses listed as economic damages are STRICKEN for lack of evidence or because they were not incurred by plaintiff herself</u>:

34. Plaintiff continued having difficulties communicating with her counsels since all conversations had become adversarial. The situation became completely untenable during the months of July and August, 2012 when co-defendants Amadeo-Murga and Toyos-Olascoaga refused to request the Honorable Court to re-schedule the continuation of the Settlement Hearing that was suspended *motu proprio* by Judge Cerezo.

35. In view of the above, Plaintiff contacted the undersigned in September of 2012 as to the possibility of filing a legal malpractice suit against defendants. Mr. Mudd stated that in his opinion, defendants had been negligent but since he knew them personally, he could not take the case. During said conversation, Plaintiff requested that he take over her representation in her discrimination action against Dr. Conte-Miller, Dr. Rivera-Diez and the Forensic Science.

36. Plaintiff retained the services of Atty. John Mudd on September 11th, 2012 and on September 12th, 2012 requested that co-defendants Toyos-Olascoaga, Amadeo-Murga, Ramos-

Gonzalez, and Miranda-Broco withdraw as her legal representation. Defendants filed the corresponding motion questing withdrawal as legal counsels on September 14th, 2012. The undersigned filed the corresponding Motion for Leave to Appear as Counsel on September 19th, 2012.

37. As part of his analysis of the discrimination lawsuit, the undersigned determined that the best chance of salvaging the case was to file a motion pursuant to Rule 60(b) requesting the reinstatement of the University of Puerto Rico and some of the causes of action. This was necessary since the one-year limit of Rule 60 would expire on September 29th, 2012, merely two (2) weeks after above-mentioned co-defendants filed their motion to withdraw as counsels for Plaintiff.

38. As the undersigned had stated he would not take the malpractice case, Plaintiff requested from a personal friend, counsel Ana B. Castro-Alvarez, to draft the corresponding letter tolling any causes of action for legal malpractice against the above-mentioned codefendants since some of the actions would become time-barred on September 29th, 2012. As a result, on September 24th, 2012 counsel Castro-Alvarez sent via certified mail the above-mentioned letter to defendants informing them of her decision to pursue a malpractice claim against them.

39. As a result of the filing of Rule 60(b) motion and the tolling letter, on September 27th, 2012 codefendants Amadeo-Murga, Toyos-Olascoaga, Ramos-Gonzalez, Miranda-Broco filed a Special Appearance Requesting Intervention in the pending case against Dr. Conte-Miller, Dr. Rivera-Diez, and the Forensic Science Institute. In said special appearance, the above-mentioned codefendants requested from the Honorable Court leave to respond to the claims of mistake, inadvertence and excusable neglect asserted on the Rule 60(b) motion. These actions

are in clear violation of Rules 1.7 and/or 1.9 of the Model Rules of Professional Conduct adopted by American Bar Association and did not help Plaintiff's case.

40. In addition, on February 13th, 2013, codefendants Toyos-Olascoaga, Ramos-Gonzalez, and Amadeo-Murga filed a civil action in Commonwealth Court against Attys. Mudd and Castro-Alvarez alleging that they had illegally and unethically interfered with the contract that existed between them and Dr. Tormos-Pol and that the filing of the Rule 60(b) motion was libel. Also, the complaint included information that was privileged including the amounts for which plaintiff was willing to settle her case.

41. On March 25th, 2013, codefendants Toyos-Olascoaga and Amadeo-Murga forwarded a letter to Atty. Damaris Ortiz-Gonzalez, counsel for Dr. Conte-Miller and Rivera-Diez in the pending federal litigation, stating that they had commenced a legal action against Attys. Mudd and Castro-Alvarez for interfering in the contractual relationship between Dr. Tormos-Pol and them, stating that they were contemplating filing a motion for attorneys' fees for the work performed. This had the effect of alerting counsel for said defendants of the breach of privileged information that had transpired.

42. Alarmed by what had transpired, Plaintiff decided to file ethical complaints against defendants in this case, both in the Supreme Court of Puerto Rico and in the United States District Court for the District of Puerto Rico. After the filing of said ethical complaints, defendants, who had sued the undersigned and Ms. Castro but had not filed ethical complaints against them, filed said complaints and sent them to the undersigned the day before one of the settlement hearings with the clear intention to intimidate and discourage the undersigned.

43. On July 5th, 2013 codefendant Ramos-Gonzalez forwarded a letter to Hon. Luis Sánchez Betances, Secretary of the Justice Department for the Commonwealth of Puerto Rico

stating defendants knew that a settlement in the case had occurred and demanding payment of attorneys' fees for the work they had performed in the case. This was totally inappropriate since attorneys' fees pursuant to Title VII belong to the client and not the attorney.

44. On July 9th, 2013, defendants filed a motion for Attorneys' Fees in Dr. Tormos-Pol pending litigation. The motion was opposed by Plaintiff and defendants in said case and denied by the District Court.  The Honorable Court may take judicial notice that attorneys fees pursuant to 42 U.S.C. § 2000, et seq., do not belong to the attorney but rather to the client and hence this request was without legal basis. Adding insult to injury, on September 9, 2013, Defendants Toyos-Olascoaga and Ramos-González sent plaintiff, for the first time, a letter claiming attorneys' fees for their work in the case they committed malpractice and claiming damages due to her filing of ethical complaints against them. On September 10, 2013, defendant Amadeo Murga sent plaintiff, for the first time, a letter claiming attorneys' fees for his work in the case he committed malpractice and claimed damages due to her filing of ethical complaints against him.

## CAUSES OF ACTION

a. Legal Malpractice

45. Plaintiff realleges and adopts by reference paragraphs 1-45 of this complaint.

46. A cause of action for legal malpractice in PR has the following elements: (1) the existence of an attorney-client relationship giving rise to a duty; (2) that the attorney, either by act or omission, breaches it; (3) that said breach of duty be the proximate cause of the injury to the client; and (4) that the plaintiff client sustains actual damage or loss. These elements, different from the usual civil law origin, were adopted by the Puerto Rico Supreme Court in *Colón v. Geigel*, 115 D.P.R. 232 (1984) and have their origin in U.S. common law.

47. As stated before, defendants were plaintiff's lawyers in a case before Judge Carmen Vargas de Cerezo. Several of the causes of action in the aforementioned complaint were dismissed by Judge Cerezo. The Civil Rights 1983 claims were dismissed as time barred although at the time the parties signed their contract, April 2010, it was still alive. The complaint had to filed on or before July, 2010 but the complaint was not filed until September 2010.

48. In addition, Judge Cerezo made it clear that several causes of action were not properly pled, not only in the complaint and amended complaint, but in a tendered Second Amended Complaint. After their dismissal, defendants failed to seek relief via Rule 59(e), Rule 60(b), straight appeal nor a 28 U.S.C. § 1292 relief. Moreover, defendants did not inform plaintiff that she had these alternatives. In addition, causes of action pursuant to state law were dismissed without prejudice by Judge Cerezo but defendants did not file these causes of action in the Court of First Instance nor did they inform plaintiff that this was an option. Also, as determined by Judge Cerezo, only $10,859.61 of the $36,000 claimed as Special Damages was allowed for finding the evidence "was a painstaking task due to the disorganized manner in which plaintiff's counsel, Yolanda V. Toyos-Olascoaga, kept the evidence in support of the damages listed therein. It was necessary to go item by item. As a result of this detailed review, the following expenses listed as economic damages are STRICKEN for lack of evidence or because they were not incurred by plaintiff herself."

49. When plaintiff first hired defendants, she was told that her case was worth at least $400,000. After the University of PR, other defendants and other causes of action, defendants told plaintiff her case was worth $250,000 but due to their negligence and malpractice, she was forced to settle the case for far less and hence these damages are claimed herein. Defendant's actions had deprived plaintiff of her cause of action against the UPR, her civil rights claims

against other individual defendants and claims pursuant to state law. This also forced plaintiff to settle her case against her wishes. Moreover, the whole process of the negligent management of plaintiff's case and defendants' subsequent actions after they ceased to be her attorneys, have caused plaintiff great emotional and suffering, which plaintiff values at no less than $200,000.

b. Intentional acts that cause plaintiff damage pursuant to Article 1802 of the Code and all defendants are jointly and severally liable to plaintiff for her damages.

50. Plaintiff realleges and adopts by references paragraphs 1-49 of the complaint.

51. After the attorney client relationship ceased and the undersigned filed a motion pursuant to Rule 60(b), they filed a motion to intervene to counter the allegations. In addition, they filed a complaint in the state court against her attorney claiming tortious interference and libel for filing said Rule 60(b). In that complaint, defendants revealed privileged information including what plaintiff had said she would accept in settlement, among others. Also, defendants sent a letter to the Department of Justice, claiming, contrary to established case law, a right to attorneys' fees and advising it of the existence of the state court case they filed. Moreover, the day before the final settlement, defendants again sent the Department of Justice a letter claiming a proprietary right to attorneys' fees. Finally, on September 9, 2013, defendants Toyos-Olascoaga and Ramos-González sent plaintiff a letter claiming damages for the ethical complaints she filed in state and federal court. On September 10, 2013, defendant Amadeo Murga z sent plaintiff, for the first time, a letter claiming attorneys' fees for his work in the case he committed malpractice and claimed damages due to her filing of ethical complaints against him. In addition, in answering plaintiffs ethics complaints at the state and federal level, defendants called her a liar, further causing her anguish and emotional pain and suffering.

52. These intentional acts were made in detriment of plaintiff's cause of action, her interests and her emotional wellbeing and hence have caused her damages. These acts are in violation of Article 1802 of the Puerto Rico Civil Code and hence defendants are liable for their acts. These intentional acts caused plaintiff great anguish and mental damages, which are calculated to be no less than $200,000 and all defendants are jointly and severally liable to plaintiff for their actions.

53. Plaintiff requests that all issues of fact be decided by a jury.

WHEREFORE: Plaintiff respectfully requests from the Honorable Court that it enter judgment against defendants in the amount of $825,143.39, plus costs and attorneys' fees.

In San Juan, PR, this 13th of September, 2013.

/s *John E. Mudd*
John E. Mudd
Bar Number: 201102
Attorney for Plaintiffs
LAW OFFICES JOHN E. MUDD
P. O. BOX 194134
SAN JUAN, P.R. 00919
(787)413-1673
Fax. (787)753-2202
jemudd@yahoo.com